IN THE

# Supreme Court of Appeals

OF

# VIRGINIA.

## Richmond.

HANRIOT AND ALS. V. SHERWOOD AND ALS.

JANUARY 17th, 1884.

1. EVIDENCE—*Admissibility—General rule.*—All evidence forming a link in the chain and tending to prove the issue should be admitted.
2. IDEM—*Exceptions—Opinions.*—Opinions of witnesses are in general inadmissible.
3. IDEM—*Exceptions—Experts—Handwriting.*—Under the rules of evidence in this State, expert testimony is admissible to test the genuineness of disputed writings by comparison of writings admitted or proved to be genuine with writings alleged to be forged.

Appeal from decree of circuit court of Norfolk county, rendered 2d April, 1881, in the chancery cause wherein John Hanriot and others, suing as next of kin of Francis Hanriot, deceased, against C. S. Sherwood, Peter Dufrane and others, claiming to be the legatees of the deceased.

The object of the suit was to impeach a paper writing propounded by the defendants as the will of the decedent. The

jury impaneled to try the issue of *devisavit vel non*, rendered their verdict in the affirmative. The court ordered the said paper writing to be recorded as the true last will of the decedent.

Exceptions were taken at the trial of the issue, to the exclusion by the court of certain expert testimony offered by the complainants. And they obtained from one of the judges of this court, from the said decree, an appeal and *supersedeas*.

Opinion states the facts.

*Holladay & Gayle*, for the appellants.

*J. F. Crocker* and *V. O. Cassel*, for the appellees.

LACY, J., delivered the opinion of the court.

The facts necessary to be stated are as follows: Francis Hanriot, an eccentric and miserly Frenchman, residing in the county of Norfolk, died at a boarding-house in the city of Portsmouth on the 23d day of December, 1880, to which he had been removed by the appellee, Sherwood, on the 20th of the same month. Before his removal he had lived alone, having but little intercourse with his fellow-man, with few associates, if, indeed, he could be said to have any associate, except a fellow-countryman, a pauper in the county poorhouse, which was near by, named Peter Dufrane, who was more or less constant in his attendance upon the said Francis Hanriot, according to the moods of the said Hanriot, who was an old man, feeble in health, and variable in his moods. A few days after the death of the said Francis Hanriot this Peter Dufrane exhibited a paper writing in broken English, which he claimed to have found in the loft of the old man's house, in a box wrapped in an old shirt, and which bestowed the

property of Hanriot on the said Peter Dufrane, the appellee, Sherwood, who was also his neighbor, and others, providing that none of the relatives of the testator should ever have any of his property. This will was not witnessed, but purports to be wholly in the handwriting of the testator.

This paper was offered to the county court of Norfolk county for probate on January 28, 1881, and on the 2d of February following, upon the testimony of C. S. Sherwood, the appellee, and Earnest Cackart, also one of the appellees and one of the beneficiaries under the said will, the same was ordered to be recorded as the last will and testament of the said Francis Hanriot, deceased. A suit in equity was then instituted in the circuit court of Norfolk county by the appellant, John Hanriot, residing in New Jersey, and his two nieces, residing in France, who are his next of kin, to impeach the said will.

A jury was impaneled at the March term, 1881, of the said court to determine if the said paper writing was the last will and testament of said Hanriot; and, upon hearing the testimony, which was admitted as proper by the court, rendered their verdict that the said paper writing "is the true last will and testament of Francis Hanriot, deceased."

The testimony in the case is certified to this court; but, upon well settled principles, the verdict of the jury, and the judgment of the court refusing to disturb the same, upon the motion of the appellants, must be held in this court to be final in this case. The rule is well settled, and it has been often decided here, that this court will only consider the evidence introduced by the party prevailing, and will not reverse the judgment unless, after rejecting all the parol evidence of the exceptor, and giving full faith and credit to that of the adverse party, the decision of the court below still appears to be wrong. *Read's Case,* 22 Gratt. 924; *Gimmi* v. *Cullen,* 20 Gratt. 439; *Dean's Case,* 32 Gratt. 912; *Danville*

*Bank* v. *Waddill's Administrator,* 31 Gratt. 469; *Daingerfield* v. *Thompson,* 33 Gratt. 136.

In this case there was much conflict of evidence before the jury upon the questions involved in the case. The court has certified the evidence, and not the facts proved; and when this evidence is considered upon the well established rules, which have been uniformly followed by this court in like cases, the verdict of the jury must be regarded as final upon the facts in this case, and the action of the court below, refusing to set aside the verdict of the jury, cannot be reversed here upon the ground that it is contrary to the evidence. But certain exceptions were taken to the rulings of the court in the trial of the issue which are assigned as error here.

First. The appellants presented to C. S. Sherwood, a witness for the propounders, a receipt which the said witness testified he had written and witnessed, and which was signed by Francis Hanriot, deceased; and then was also shown him a letter in French purporting to have been written and signed by said Hanriot, and which the said witness testified was wholly in the handwriting of the said Hanriot; and thereafter the appellants offered to introduce experts for the purpose of having them examine and compare the signatures to said letter and receipt, and say to the jury whether, in their opinion, they were in the same handwriting as the signature to the disputed will; but the court refused to permit such experts to so testify.

Secondly. The propounders of the will having endeavored to show that unfriendly relations existed between said Hanriot and his kindred, the appellants introduced a letter in French, which was proved by the appellee, Sherwood, who was examined as a witness touching the same, and by other witnesses, to be in the handwriting of said Francis Hanriot, deceased, for the purpose of showing the friendly relations of said Hanriot to his family, which letter the court permitted to be introduced for that pur-

pose. And said letter being so introduced for that purpose, and proved to be genuine, the appellants thereafter offered to introduce experts for the purpose of having them examine and compare the signature and body of said letter with the paper writing in dispute, with the view of eliciting their opinion, to the jury, as to whether the said letter and the said writing in dispute were in the same handwriting; but the court refused to permit said experts to be examined for the purposes aforesaid.

Thirdly. A deed was introduced, and a witness introduced by appellants testified to having seen the said Francis Hanriot sign the said deed, and to his taking the acknowledgment of the said Hanriot thereto in his capacity as a commissioner in chancery, but that he had no recollection of his signature, and could not recall it without first seeing the signature to the deed, which having seen and compared with the will propounded he was enabled to testify that he did not believe that any portion of the will in dispute, or the signature thereto, was in the handwriting of the said Francis Hanriot.

The deed being thus in the case, the appellants moved the court to allow them to introduce experts for the purpose of having them examine and compare the signature of said deed with the signature of the disputed paper, with the view of eliciting their opinion on the question; but the court refused to permit such experts to testify.

Fourthly. The appellants then moved the court to allow them to introduce in the case certain checks and receipts, purporting to have been signed by said Francis Hanriot, deceased, and to prove the genuineness of such signatures by witnesses who saw him make the same, with the view to introduce thereafter experts for the purpose of having them examine and compare the signatures to such checks and receipts with the paper writing, and the signatures thereto in dispute, with the view of eliciting the opinion of such experts as to whether the

paper writing in dispute is in the same handwriting as the signatures to said checks and receipts. When the court held such evidence to be inadmissible.

Upon these rulings of the court below the appellants insist that it was error to refuse to permit the use of expert testimony thus offered to test the genuineness of the disputed will as a paper wholly in the handwriting of the dead man, including the signature thereto, and have ably urged before this court here this assignment of error.

The appellees, on the other hand, insist that this is an attempt on the part of the appellants to bring before this court for consideration questions which the bar and courts of this State have treated as settled for many generations; that it is an effort to bring under review the reasons and policy on which the rules of evidence in this respect are founded, rather than to dispute the rules as established, and that this appeal should have been—as was done in England and in other States of this Union—to the legislature, rather than to the judicial department of the government; that the rules of the common law on this subject have not been altered by any legislative act in this State.

Under the rules of evidence in this State, can expert testimony be employed to test the genuineness of disputed writings, by comparison of writings admitted or proved to be genuine with the alleged forgery? This is the question raised in this cause which it is necessary to decide. The testimony of persons of skill, who, by a course of previous habit and practice, or of study, have become familiar with the subject in hand; who by practice in a business or profession which requires them to possess a certain knowledge of the matter under consideration, has been used in arriving at correct conclusions in courts of justice from the earliest periods. And we are told by the historian of the law that the practice of admitting the evidence of witnesses,

who have become qualified by study and experience to express opinions upon questions of science and art, was authorized by the Roman law. And in the case of *Buckley* v. *Rice,* 1 Plowden, decided in 1553, Mr. Justice Saunders is reported as saying: "If matters arise in one law which concern other sciences or faculties, we commonly apply for the aid of that science or faculty which it concerns, which is an honorable and commendable thing in one law."

Nevertheless, the rule admitting the testimony of experts is exceptional; for no principle of law is better settled than that the opinions of witnesses are in general inadmissible, though to this general rule there are many exceptions, and there are some subjects upon which a witness, without being an expert, may give his opinion in a case. The competency of this evidence rests upon two necessary conditions: first, that the subject matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time; and, second, that facts upon which a witness is called to express his opinion are such as men in general are capable of comprehending and understanding, &c. *Commonweath* v. *Sturtivant,* 117 Mass. 122–137.

Experts are called when the question involved does not lie within the range of common experience or common knowledge; then the opinions of witnesses skilled in the particular science, art or trade to which the question relates are admissible, because his professional pursuits, his peculiar skill and knowledge in some department or science, not common to men in general, enable him to draw an inference, where men of common experience, after all the facts are proved, would be left in doubt. *New England Glass Co.* v. *Lovell,* 7 Cush. 319. And the rule admitting experts in such cases is founded on necessity; for juries are not selected with any view to their knowledge of a particular science, art, or trade, requiring a

course of previous study, experience and preparation; and when *questions* arise which do not lie within the information of men in general, but fall rather within the limits of some art or science, it becomes necessary that juries should have the benefit to be derived from the opinions of witnesses possessing peculiar skill in the department to which such questions relate; and the foundation upon which such testimony rests is the superior knowledge or experience of the expert upon the subject matter, where the subject matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, without assistance. The question as to whether such witness possesses the peculiar qualifications necessary to render him competent to so testify as an expert, is a question for the court, to be decided upon proper evidence, and the decision of the court upon the point will not be over-ruled, except in a clear case. Experts have for years asserted the possibility of investigating handwriting upon scientific principles, and the courts have, consequently, admitted such persons to testify in cases of disputed handwriting. It may be asserted that experiment and observation have disclosed the fact that there are certain *general principles* which may be relied upon in questions pertaining to the genuineness of handwriting. For instance, it seems to be established that in every person's manner of writing there is a certain distinct *prevailing character* which can be discovered by observation, and being once known, can be afterwards applied as a standard to try other specimens of writing, the genuineness of which is disputed. *Plunkett* v. *Bowman,* 2 McCord, 139. Opinion of Justice Gantt. See also 1st McCord's R., 466.

In each person's handwriting there is some distinctive characteristic, which, as being the reflex of his nervous organ-ization, is necessarily independent of his own will, and uncon-sciously forces the writer to stamp the writing as his own.

Those skillful in such matters state that it is impossible for a person to successfully disguise in a writing of any length this characteristic of his penmanship. Rogers on Expert Testimony, 177. That no two autograph signatures written in a natural hand will be perfect *fac similes*. In the famous Howland will case, reported in 4 Am. Law Review, 625–649, Prof. Pierce, a very distinguished mathematician, testified that many odds to one an individual could not, with a pen, write his name three times so exactly alike as were the three alleged signatures in that case to a will and two codicils. The experts, therefore, claim that, if upon superimposition against the light they find that two signatures perfectly coincide, that they are perfect *fac similes*, that it is a probability, amounting practically to a certainty, that one of the signatures is a forgery; and it seems that there is abundant justification for the holding of the courts that there is a science of handwriting, and that experts who have qualified themselves by study and experience, should be received to testify to the genuineness and identity of handwriting. Rogers on Expert Testimony, 178.

Among experts as to handwriting have been classed writing engravers, tellers, and cashiers of banks, and, in general, any officer of a bank whose business it is to examine papers with a view of detecting alterations and erasures, and ascertaining genuine from spurious writings. *Dubois* v. *Baker*, 30 N. Y.

It was held in the case of *Miles* v. *Loomis*, 75 N. Y. 287, that the fact that the expert has no other knowledge of the writing in dispute than that derived by a comparison of the disputed writing with others that are genuine, is not regarded as any disqualification whatever.

There are two methods of judging of the genuineness of handwriting by means of comparison. The one where the witness is *familiar* with the handwriting, and judges by comparison; this is the method for an ordinary witness. The other where

the witness has no personal knowledge of another's hand-writing, has before him in juxtaposition the writing in dispute with other writing admitted or proved to be genuine, and from a comparison of such writings expresses an opinion whether the writings were made by the same party; this is the method of the expert.

In England a comparison of handwriting placed in juxta-position has always been permitted in the ecclesiastical courts. But we find a different rule prevailing in the common law courts until the year 1854, when it was expressly authorized by act of Parliament.

In this country a difference of opinion has prevailed, and some of the State courts have denied, while others have main-tained, the right to introduce the testimony of experts based on a comparison of writings placed in juxtaposition. The question in England, as we have said, was put to rest by statutory provisions, and so in some of the States of this country by statutory enactment it has been authorized.

Where there has been no statutory enactment in a State, there has been a difference of opinion as to which rule should be adopted. The English rule, as it obtained before the act of Parliament, was adopted by the Supreme Court of the United States in the case of *Strother* v. *Lucas*, 6 Peters, 763, where Justice Thompson said: "It is a general rule that evidence by comparison of hands is not admissible where the witness has had no previous knowledge of the handwriting, but is called upon to testify merely from a comparison of hands," &c., p. 767.

But in a later case, *Moore* v. *United States*, 91 U. S., Mr. Justice Bradley said, delivering the opinion of the court: "But the general rule of the common law, disallowing a comparison of handwriting as proof of signature, has exceptions equally as well settled as the rule itself. One of these exceptions is,

that if a paper admitted to be in the handwriting of the party, or to have been subscribed by him, is in evidence for some other purpose in the cause, the signature or paper in question may be compared with it by the jury." In stating this case he had said: "The court compared it with his signature to another paper in evidence for other purposes in the cause, respecting which there seems to have been no question, and from the comparison adjudged and found that the signature was his."

In the Supreme Court of Alabama, where there had been no statutory enactment, in the case of *Kirksey* v. *Kirksey*, 41 Ala. 626, the court allowed expert testimony as to the genuineness of a signature or writing, or its being counterfeit, without having any acquaintance with the handwriting in dispute, but not by comparison.

In the case of *Travis* v. *Brown*, 43 Penn., it was held that experts might be examined to prove forgery or simulated writings, and to give the conclusions of skill. And that test-documents to be compared should be established by the most satisfactory evidence before being admitted to the jury. The Court of Appeals of New York, in the case of *Dubois* v. *Baker*, *supra*, decided in 1864, held that a comparison of the hand-writing of the note in controversy with other writings of the alleged maker in evidence in the cause was allowable for the purpose of ascertaining the genuineness of the note. The New York statute, expressly authorizing the comparison and enlarging the rule of the court, was passed long afterwards in the year 1880.

In the case of *McComber* v. *Scott*, 10 Kansas R. 335, the court adopted the rule allowing the comparison of hands in advance of any statutory provision, alleging that there was no sound rule of evidence by which it could be excluded.

In the case of *Forgey* v. *The First National Bank of Cambridge City*, 66 Ind. 123, the court held the opinion of an expert

as to whether the signature attached to a note is genuine, formed by comparing the same with a signature which the maker admits to be his, is competent evidence to prove the execution of the note; and this was in a State where no provision had been made by statute. Judge Perkins, in his opinion, said, speaking on this subject: "Formerly such testimony was inadmissible. Citing *Clark* v. *Wyatt*, 15 Ind. 271. But such testimony is now admissible. Citing *Chance* v. *The Indianapolis Gravel Road Co.*, 32 Ind. 472. But the witnesses giving it must be experts."

In the case of *Yates* v. *Yates*, 76 N. C., Rodman, J., speaking for the court on this subject, in a State where there had been no legislative enactment, said: "The witness was allowed to compare the signature of John Eller, as subscribing witness to the alleged deed from John Yates to the plaintiff, with the signature of said Eller to a deposition introduced by the plaintiff in evidence on the trial. This was permissible under the dicision in *Outlaw* v. *Hurdle*, 1 Jones, 150." The court in this case, and other cases, said: "The general practice seems to be more liberal than what was approved in that case." Greenleaf says: "Where other writings admitted to be genuine are already in the case, here the comparison may be made by the jury with or without the aid of experts." Greenleaf on Evidence, sections 578, 576, note 4. Citing *Chandler* v. *LeBacon*, 45 Me. 534. It cannot be necessary to multiply citations from other States. It may suffice, in this connection, to say that the courts of many other States have adopted this rule for themselves, without waiting for legislative action. Among them Colorado. See *Miller* v. *Eicholtz*, 5 Col. 243; Michigan—see *Vinton* v. *Peck*, 14 Mich. 287; *Alfred Foster's will*, 34 Mich.; *First National Bank* v. *Robert*, 41 Mich. 709; Missouri—see *Cerby's Executor* v. *Weddle*, 57 Mo.; *State* v. *Clinton*, 67 Mo. 380; *State* v. *Thompkins*, 71 Mo. 616; *Pomcelly* v. *Lewis*, 8 Mo. App.

593.    While in still many other States the rule has been thus adopted, in accordance with statutory provisions, in this State there has been no statutory enactment upon this subject, and it is strenuously insisted that the old common law rule still prevail here.

The rule of the common law courts of England, as we have said, generally excluded this testimony; but in those courts the rule was modified and narrowed from time to time until we find exceptions equally as well settled as the rule.    This sort of testimony was always admitted by the ecclesiastical courts, and the most constant and unremitting efforts were made in the common law courts to bring this rule of the ecclesiastical courts into trials in the common law courts, as we are told by Coleridge, Judge, in the above cited case of *Doe* v. *Suckerman.* The comparison of handwriting by the jury, when specimens were already in the case for other purposes, was at last admitted by the common law courts upon the ground of necessity. One criminal judge declared that proof of handwriting should be admitted to the jury like every other species of proof.    But it may be said that, in the main, this rule was adhered to by the said courts, until the efforts for its change, culminated in the act of Parliment, cited above, so that now such proof is universally admitted in all the courts of England.

In the first case cited by counsel, decided in this State, *Redford* v. *Peggy*, 6 Rand. 316, the question whether evidence by comparison of hand be admissible, was not directly before the court; yet the nature of the case seemed to bring the point under review; and out of the four judges who sat two say that such evidence is inadmissible, and it is claimed that the same conclusion may be drawn from the opinion of a third.

In the case *Rowt* v. *Kile*, 1 Leigh, decided in 1829, this court, referring to Peake, Phillips and Starkie, and citing them as saying that it is now settled law that evidence by comparison

of hands is not admissible, say that it is so settled by the cases referred to by them.

The case of *Sharp* v. *Sharp*, in 2 Leigh, 271, while it was a case where the handwriting was proved by a witness who had never seen the testator write, cannot be considered as a case in point here.

In the case of *Pepper* v. *Barnett*, 29 Gratt. 405, the witness who had seen the party write only once, and testified that he was not familiar with the handwriting and would not be able from his knowledge of her handwriting to distinguish it from that of others, but that he was of opinion, from having compared the signature in question with the one he saw her make, that it was genuine, was admitted as a competent witness, and his evidence held admissible.

In *Burruss' Case*, 27 Gratt. 946, Judge Moncure says: "As a general rule, certainly, documents irrelevant to the issues in the record cannot be received in evidence at the trial to enable the jury to institute a comparison of hands, or to enable a witness to do so. This is clearly the rule in England, especially according to the modern cases, and although it is said that the American decisions on the subject are far from being uniform, yet it cannot be said that in this State the correctness of the rule has ever been questioned by any decision of this court." Citing 1st Greenleaf on Evidence, section 579. And Mr. Greenleaf cites the case of *Doe* v. *Suckerman, supra,* where the judges were evenly divided upon this question. In the same case Judge Moncure said, speaking of the opinion of a witness on the genuineness of the handwriting in question: "It is a statement, not of facts to which a witness generally testifies, but of mere matter of opinion to which a witness rarely testifies, and only in special cases and for peculiar reasons. An *expert* is sometimes called upon to give his opinion, which is evidence in a court of justice; but the witness was no expert; he had no

peculiar knowledge of handwriting, or of the capacity of man to write." This is the only recognition, it is believed, if indeed this can be so called, of the use of expert testimony in the comparison of handwriting in this State. It is, as we have before said, *insisted* that by the act of assembly which recognized in 1661 the common law of England as in force in this Commonwealth, and by the ordinance of 1776, chapter 5, which adopted the common law in this State, and acts of Parliament prior to the fourth year of James the First, of a general nature, the rule of court in question is the law in this State until abrogated by statutory enactment.

Judge Tucker says the common law of England is, at this day, the law of this Commonwealth, except so far as it has been altered by statute, or so far as its principles are inapplicable to the state of the country. It adapts itself to the situation of the society, being "*liberalized by the courts* according to the circumstances of the country and the manner and genius of the people, so as to effect a reasonable and substantial, rather than a literal compliance with its principles." Citing 6 Mun. 148; 1 Wash. 83; 1 H. & M. 161–162; 4 H. & M. 19.

And while we find the rules of the common law were undergoing modification in the courts of England, the rules of evidence have been in the courts of this country undergoing such modification and changes, according to the circumstances of the country and the manner and genius of the people. The question which is submitted to this court in this case is one which we believe has not before been submitted in the form in which it is here submitted. And, in reaching a just conclusion, we must keep in view the main object, which is the attainment of truth and the ends of justice in this case. In seeking its solution we have looked to the light shed upon the question by the decisions of other States of the Union; and while we find that formerly there was a great conflict of

authority on the subject of comparison of handwriting, the advance of science and the growth of business and the necessities of the people have led to changes and modifications of the rule in so many States that now the great preponderance of authority appears to be on one side.

And if, as Judge Moncure said in the case cited above, expert testimony is admitted by the courts of justice in the trial of cases, is this a case where the ends of justice would be subserved by its use?

We suppose that it may be laid down as a general rule that all evidence that tends to prove the issue in any particular case—any thing that forms a link in a chain of evidence that tends to prove such issue, subject to some exceptions—should be admitted. To exclude any evidence that tends to prove the issue, is the exception, and not the rule. And it seems that before any exception can be allowed to a general rule there must be some good reason for the exception. It will not be claimed that the evidence excluded in this case does not tend to prove the issue, or that it is wholly irrelevant; but it will be admitted that, if it is competent, it is also relevant, and tends to prove the issue; if it is excluded, it must be for some good reason. Can it be claimed that such evidence should be excluded merely because it is a comparison of handwriting? for all evidence of handwriting, except where the witness himself has seen the writing done, is, in its nature, a comparison of handwriting; it is the belief which the witness entertains upon comparing the writing in question with the exemplar in his mind, derived from some previous knowledge of the party's handwriting. That evidence of this kind may be introduced is admitted. It is conceded that comparison may be had between writings where the writings to be used as specimens are admitted to be genuine, when the different writings are already properly in evidence, or properly in the case for some other purpose,

when the witness who has seen the person whose signature is disputed write previously; and in this court it was so allowed in the case of *Pepper* v. *Barnett, supra,* although the witness had no recollection of the writing and could not distinguish it from others, because the witness had once seen the party write, and then only the signature, and had no exemplar in his mind. Some of the writings in this case were introduced for other purposes, and properly in the cause. To exclude the evidence of skilled persons, and under the same circumstances admit that of unskilled persons, who in fact have no real acquaintance with the disputed handwriting, seems to be artificial and unreasonable. Our juries are selected from educated and intelligent citizens, and the rule adopted in England or elsewhere for juries that could not read writing, has no application to this State, where juries can read writing and are able to form intelligent opinions concerning it.

This is a case of an alleged forgery. The testimony of experts has been generally admitted in cases of erasures and of feigned hands without comparison of handwritings, and why not by comparison of handwriting where the writing compared is admitted to be genuine, or proved to be genuine to the satisfaction of the court? If the witness Edwards could compare the writings because he had once seen the party write his name, although an unskilled witness, and did not remember it without looking at and comparing it, is there any sound reason for holding that one skilled and more competent, and not less acquainted with the disputed handwriting, if neither knew it, is inadmissible? We think not, and we are of opinion, both upon reason and the weight of authority, that such testimony is admissible, and that the court below erred in thus admitting the inferior evidence and rejecting the best evidence on the trial of the issue herein. And we are therefore of opinion that the decree complained of, of the 2d day of April,

1881, must be reversed and annulled, and the cause remanded to the circuit court of Norfolk county for a new trial of the issue in this cause, to be had in that court in accordance with the foregoing views.

HINTON, J., dissented.

The decree was as follows:

This day came again the parties, by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said circuit court erred in refusing to permit the use of expert testimony on the trial of the issue in this cause, as set forth in Exceptions No. 1, No. 2, No. 3, and No. 4, taken in the trial of the said issue; therefore it is decreed and ordered that the said decree be reversed and annulled, and that the appellants recover against the appellees their costs by them expended in the prosecution of their appeal aforesaid here. And this cause is remanded to the said circuit court for a new trial of the said issue herein, with directions to allow the use of expert testimony by comparison of handwriting of the said Francis Hanriot, proved to be genuine to the satisfaction of the court, with the disputed writing alleged to be the will of the said Francis Hanriot, deceased, and proceed in the said cause in accordance with the foregoing opinion and the views herein, in order to a final decree in the cause.

Which is ordered to be certified to the said circuit court of Norfolk county.

DECREE REVERSED.