Graham v. Tucker *et al.*—Syllabus.

---

FRANK T. GRAHAM, *Plaintiff in Error,* v. VIRGINIA TUCKER AND JAMES F. TUCKER, HER HUSBAND, *Defendants in Error.*

A married woman, the owner of statutory separate real estate, upon which is located a swimming pool and bath houses, conducted by the husband and wife as a public resort, is sued jointly with her husband for damages in tort by a party who was injured while lawfully using said premises, by his feet slipping and falling on his left leg upon the projecting points of planks alleged to have been negligently left uneven: *Held,*

that under the constitution and laws of Florida under the circumstances stated, the married woman is not liable in an action of tort.

This case was decided by the Court En Banc.

Writ of Error to the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*H. S. Hampton* and *W. T. Martin*, for plaintiff in error.

*Thomas Palmer,* for defendant in error.

HOCKER, J.—In July, 1907, the plaintiff in error, herein after called the plaintiff, filed an amended declaration against the defendants in error in the Circuit Court of Hillsborough County in the following language: "Frank T. Graham, by his attorneys W. T. Martin and Davis & Hampton, files this his amended declaration by leave of the court first had and obtained, and sues Virginia Tucker and James F. Tucker, her husband, in an action of case, damages $3,000.00, for that whereas heretofore, to-wit: on or about the 14th day of July, A. D., 1906, the said Virginia Tucker was the owner of certain premises situated in the county of Hillsborough and State of Florida, on which were located a certain swimming pool and bath houses, the said property being the separate statutory property of the defendant, Virginia Tucker, a married woman, whose husband is James F.

Tucker, the defendant herein; that on said premises on said date the said defendants were conducting a certain swimming pool, or public bathing place, where the public were invited to enter and for certain hire and reward were allowed to bathe in said pool, the same being a public resort. And plaintiff avers that while conducting the said public bathing resort the said defendants, in fitting up the said premises for the use of the public, disregarding their duty to provide safe premises by law, so negligently and carelessly constructed and equipped said premises that divers planks, the flooring of the walkway surrounding said pool, were uneven and the ends of the same were allowed to project over the side of said pool, the same constituting a dangerous projection to persons using said pool in the ordinary way or walking along said walk-way, and the condition of said premises was known to the said defendants, or could have been known by the exercise of ordinary care, but was unknown to the plaintiff.

Plaintiff avers that on said date while he was lawfully using the said premises and walking along said walk around said pool provided for the public, and without negligence on his part, his feet slipped on the wet flooring of said walk-way and he was precipitated in said pool; that in falling his left leg came in contact with one of the projecting points of said planks which were uneven and had been allowed to project over said bath-pool, and from the effect of which his left leg was then and there bruised, cut and wounded by means of which he became sick and sore, and from thence for a period of several months was confined to his bed from said injuries; the plaintiff avers that he has been compelled to pay out a large sum of money for physicians' services and for medicine in an effort to rid himself of the injury caused by the negligence of the defendant, and in ad-

dition thereto, was compelled to submit to two surgical operations in order to effect a cure of the injury above set forth; wherefore plaintiff says he has been injured and sustained damages to the sum of $3,000.00, and therefore brings his suit."

This amended declaration was demurred to and the substantial matters to be argued were among others, that, first, the declaration does not state a cause of action; second, that a married woman cannot be sued at common law for a tort such as that complained of; third, that under the constitution and laws of Florida a married woman's property cannot be subjected to a judgment such as that sought for; fourth, that under the laws of Florida the husband has the sole control of her real property, and is alone responsible for torts committed thereby.

The demurrer was sustained and a judgment entered for the defendants. To review this judgment a writ of error was sued out. The assignments of error here are, first, that the court erred in sustaining the demurrer, and, second, that it erred in entering judgment for the defendants.

The sole question presented and urged here by the plaintiff is whether a married woman is liable under the constitution and laws of Florida in an action for a tort such as is described in the declaration. The only decision of this court cited to sustain the contention that she is so liable is the case of Prentiss v. Paisley, 25 Fla. 927, 7 South. Rep. 56. In this case this court held that a married woman is personally liable for her wrongful civil acts *or actual torts* (italics ours) including frauds, not growing out of or founded upon, or directly connected with, or a part of, or the means of effecting a contract which she has undertaken to make; and she may be sued jointly with the husband in respect to such acts, or separately if she survives him. His liability for her

torts is a result of the mere fact that by the common law rules a suit cannot be maintained against the wife alone during her coverture. If before or pending the action she dies the right of action against him fails. Whenever her coverture avoids the contract it is likewise a bar to a personal recovery for the fraud and this cannot be overcome by suing ex delicto." One of the cases cited in support of this view is the case of Liverpool A. L. Association v. Fhirhirst, 9 Excheq. 422, which seems to be generally treated as a leading case. In Prentiss v. Paisley, there is not the slightest intimation that the liability of a married woman for her torts is in any way enlarged or affected by the constitution or laws of Florida changing the common law as to her ownership of a separate legal estate and giving her power to make certain specified contracts with reference thereto, and making the same liable *in invitum* in equity to certain specified debts. It is uniformly held by this court that these constitutional and statutory changes do not make her liable to a personal judgment or decree, unless it may be that the statute allowing her to be made a free dealer would have that effect. Prentiss v. Paisley, *supra;* First Nat. Bank of Pensacola v. Hirschkowitz, 46 Fla. 588, 35 South. Rep. 22; 2 Bishop on Law of Married Women, § 265. This court in the case of Mercantile Exchange Bank v. Taylor, 51 Fla. 473, 41 South. Rep. 22, undertook to distinguish between those contracts of sale, transfer and conveyance which a married woman may make under our statutes, and which may be enforced against her, and those obligations which a court of equity is authorized by the constitution to enforce, *in invitum* against her separate legal estate. It has never been held by this court that the effect of our constitutional provisions and statutes is to place a married woman in the position of a *feme sole,* but on the contrary that her common law

status remains except to the extent it has been modified by these provisions and statutes. Micou v. McDonald, 55 Fla., 776, 46 South. Rep. 291.

In the case of Liverpool A. L. Association v. Fhirhirst, *supra*, it was held that a *feme covert* is responsible for all torts committed by her during coverture, and the husband must be joined as a defendant; and consequently they are liable for frauds committed by her as for other personal wrongs; but when the fraud is directly connected with the contract with the wife or is the means of effecting it, and parcel of the same transaction, the wife cannot be responsible, and the husband be sued for it together with the wife."

In Head v. Briscoe, 5 Car. & P. 484, it was held that a husband was liable for a slander perpetrated by his wife though he was living apart from her.

In the case of Woodward & Perkins v. Barnes & Wife, 46 Vt. 332, it is held that husband and wife are not jointly liable for these torts of the wife which are founded on her contracts, and it is said: "The general principle, that for the torts or frauds of the wife, an action may be sustained against her and her husband, applies only to torts *simpliciter*, or cases of pure, simple tort, and not where the substantive basis of the tort is the contract of the wife." See 1 Bishop on Law of Married Women, § 905; 2 Id. § 261; Schouler's Domestic Relations, (5th ed.) § 76; Henley v. Wilson, 137 Cal. 273, 70 Pac. Rep. 21, 92 Am. St. Rep. 160, and note.

In the case of Simpson v. Bowden, 33 Me. 549, it is held that the law will not imply a contract in a case where the parties cannot legally make an express contract.

In the case of Chase v. Second Avenue R. R. Co., 97 N. Y. 384, it is held that "an implied contract is one which the law infers from the facts and circumstances of the case; but it will not be inferred so far as I can con-

ceive, in any case where an express contract would for any reason be invalid." 15 Am. & Eng. Ency. Law (2nd ed.) 1078.

It may be doubtful whether this statement of the law is entirely correct. Bishop treats it under the title of "Contracts created by law." He says "when the law lays on one a duty to another, it creates a promise from the former to the latter to discharge the duty. The limit of the doctrine is, that where from the nature of the case, not merely from inability of the party, there could not be a contract in fact, the law does not undertake to create the impossible." Bishop on Contracts (2nd. ed.) §§ 182 to 186 inclusive. So he shows that though the contract of a minor or insane person for necessaries on agreed terms would not be binding, yet the party who furnishes the goods may recover of the one liable in law to pay, not what the contract provides though it may be looked to, but what they were reasonably worth. Id. § 188.

In the case of Marye v. Root, 27 Fla. 453, 8 South. Rep. 636, this court had occasion to critically examine the constitutional and statutory provisions then and now existing conferring upon married women certain property rights which she did not have at common law. The result of that decision is that the statute providing the property of a wife shall remain in the care and management of the husband, that he shall not charge for the management, nor shall the wife be entitled to sue her husband for the rent, hire, issues, proceeds or profits of her said property, is not in conflict with the constitutional provision that all property both real and personal of the wife owned by her before marriage or acquired afterward by gift, devise, descent or purchase shall be her separate property and not liable for the debts of her husband. The present constitutional provision, section I, Article XI, constitution of 1885, modifies the former (that of 1868)

in that she may make her separate property liable for her husband's debts by her consent given by some instrument in writing executed according to the law respecting conveyances by married women. The second section of said article also provides how her separate property may be charged in equity for certain obligations. If the statute giving the husband the care and management of a wife's property was not in conflict with the constitution of 1868, (and to that extent we approve the views of the court in that case) it is not perceived that it would violate that of 1885. Fritz v. Fernandez, 45 Fla. 318, 34 South. Rep. 315; Rawls v. Tallahassee Hotel Co., 43 Fla. 288, 31 South. Rep. 237. A married woman it is true has been given some additional statutory rights since the decision in Marye v. Root, *supra*—such as the right to her earnings and wages and the right to bring suit or actions for or concerning her real estate without joining her husband or next friend. § § 2591 and 2593 General Statutes of 1906. Section 2594 also provides that specific performance may be decreed against a married woman. We are not called upon to say what would be the effect of the renunciation by the husband of his statutory right to manage and control his wife's property. See Fritz v. Fernandez, *supra*. We can discover, however, neither in the constitution or statutes any purpose to remove generally all her common law disabilities, but only those specifically mentioned; nor any purpose to make her liable for those torts for which she was not liable at common law. In several states a married woman has either by statute or constitutional provision been placed upon the legal footing of a *feme sole*, and she is, therefore, held liable for her torts. In some the statutes expressly provide she shall be so liable. Norris v. Corkill, 32 Kan. 409, 4 Pac. Rep. 862; Quaility v. Battie, 135 N. Y. 201, 32 N. E. Rep. 47; Strouse v. Leipp, 101 Ala. 433, 14

South. Rep. 667, 46 Am. St. Rep. 122 and note; Henley v. Wilson, 92 Am. St. Rep. note p. 169.

We have noticed two cases in which it is held that, under the common law, as well as under the statutes which authorize a married woman to own and control property, she is liable for a tort committed in the management of such property. One is the case of Mayhew v. Burns, 103 Ind. 328, 2 N. E. Rep. 793, and the other is the case of Flesh v. Lindsay, 115 Mo. 1, 21 S. W. Rep. 907, 37 Am. St. Rep. 374. In the first case the tort consisted in making an excavation causing a pitfall into which the plaintiff fell. The maxim *sic utere* etc. is applied and it is said she was liable at common law as well as under the statute. In the second case the tort grew out of the negligent repairing of a party wall between the property of a married woman and another. It was held that she was liable both under the statute and at common law. But as a married woman could not own, control and manage a separate legal estate at common law, we cannot understand the conclusions of these courts which are unsupported by any authority directly in point. The erection and maintenance of a party wall is a matter of contract unless required by statute (22 Am. & Eng. Ency. Law, 2nd ed. 240), and we have seen no authority holding a married woman liable for a tort based on a contract. Our court as we have seen has decided the contrary. Prentiss v. Paisley, *supra.* There is an analogy between the common law disability of a married woman and that of an infant, and while both are liable for pure torts we have seen no case which holds either liable for an injury due to lack of skill and experience. 22 Cyc. 621.

We find no authority holding a married woman liable

for a tort under the circumstances stated in the declaration.

The judgment of the Circuit Court is affirmed.

All concur, except PARKHILL, J., disqualified, who takes no part.