Sigmund Stettheimer, Appellant, v. Louisa J. Killip as Administratrix, etc., et al., Respondents.

The law does not require that the parties to a contract should stand upon the same footing as to knowledge or information; where one has full and equal opportunity with the other to ascertain the facts and no fraud is practiced he must abide by the contract, although he ignorantly or negligently makes a bad bargain, each is entitled to the benefit of his own sagacity

Plaintiff proposed to purchase the interests of his co-partners in a firm business; the book-keeper made out a statement of accounts in which the private accounts of the partners were included as assets. The agent acting for the other partners refused to sell upon that basis, but made a statement in which the private accounts were set down as profits and offered to sell with that statement as a basis. Plaintiff with full knowledge of the difference in the statements, accepted the proposition, and the sale was completed. Plaintiff gave notes which he subsequently paid as they fell due, and never offered to return the property. In an action

for an accounting, *held*, that these facts authorized a finding that there was no material mistake or error of fact; and that plaintiff was not entitled to any equitable relief.

(Argued November 14, 1878; decided November 26, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of defendants, entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*J. C. Cochrane*, for appellant.

*Geo. F. Danforth*, for respondents. If the sale was made upon the statement of accounts by Brown his statement became an account stated and the parties bound thereby. (L. R., 4 Ex. Cas., 189.) Gross negligence is presumed when a man is ignorant of his own affairs. (1 Kerr on Mistake, 405, 406.) The adjustment was final and the payment voluntary and paid under a claim of right. (*Quincy* v. *White*, 63 N. Y., 370, 376.) Plaintiff is estopped by his silence from objecting to any part of the papers prepared in New York, showing the amount due. (*Lockwood* v. *Thorn*, 18 N. Y., 285; 63 id., 377.)

MILLER, J. The plaintiff brings this action for an accounting in reference to certain co-partnership accounts of the plaintiff, his two sons, the defendant, Tamblingson, and James S. Killip, deceased, who is represented by defendant Louisa J. Killip, his administratrix. The co-partnership existed between the parties for two years prior to the 1st day of January, 1873, in the clothing business, in the city of Rochester; and at or about the last named day, the plaintiff purchased all the interests of the said defendants, upon terms which were mutually agreed upon. The plaintiff claims an accounting, to correct a supposed error or an alleged mutual mistake in a statement, made at the time of

the sale of the co-partnership accounts, which constituted the basis upon which the sale of the defendants' interests was made.

It appears that the book-keeper of the firm made out a full statement of the business of the co-partnership and an inventory, with a view to a final settlement and a sale of the defendants' interests, which was delivered to the defendant, Tamblingson. At the request of Tamblingson, who desired the assistance of one Brown, who was a relative and a man of large experience in business matters, the parties proceeded to New York, for the purpose of settling the co-partnership affairs, by a sale of the same. Prior to this, the plaintiff had proposed to purchase the interest of the defendants, although no terms had been arranged. The statement made by the book-keeper showed a surplus on hand of $10,709 profits, and among the assets mentioned therein were the private accounts of the members of the firm, amounting to $35,971.56. After examination of the inventory and making some figures, Brown expressed his dissatisfaction therewith, and stated that the same were defective, unsatisfactory and incorrect; and the defendants refused to sell upon any such basis. The book-keeper was written to for further information, and another statement was furnished. The parties again met, the original inventory and additional paper being before them, and the defendants were still dissatisfied, and refused to sell upon the accuracy of the statements made in the papers furnished by the book-keeper; but they were willing to sell upon the basis of Brown's statement, in which the private accounts were set down as profits and the plaintiff finally accepted the proposition. This would increase the amount of surplus to $46,680.56. The proper papers were executed, notes given, and the bargain consummated; and the plaintiff, upon his return from New York to Rochester after the purchase, directed his book-keeper to make another division of profits, so as to conform them on the books to Brown's statement, which was done accordingly.

The claim of the plaintiff is founded upon the alleged fact

that the private accounts of the co-partnership were added to the profits at Brown's suggestion, who acted on behalf of the defendants; and that this was a palpable error and a mutual mistake, to correct which the plaintiff is entitled to relief.

The findings of the referee are adverse to the position taken by the plaintiff, and establish that there was no fraud or mutual mistake or error of facts existing at the time of the consummation of the agreement, but a disputed state of facts as to the amount of the alleged profits made by the firm, and as to which statement, that of the book-keeper, or that made by Brown, was correct; that the defendants refused to sell by the one, and offered to sell by the other, which offer was accepted by the plaintiff; and that the payment of the price was voluntary, without fraud, and without any mutual error of fact, each party having a full opportunity of knowing the facts. It is claimed that these findings were erroneous, and that the referee also erred in refusing to make several findings, as requested by the counsel for the plaintiff. As the objections urged relate to the main point in controversy, they may be considered as an entirety.

The correctness of the position of the plaintiff's counsel depends upon the fact whether there was sufficient evidence to uphold the findings of the referee; and in order to determine that question, a recurrence to the leading facts is essential. As already seen, the object of the parties was to make a sale of the assets of the firm. Considerable conversation had been had on the subject, prior to the meeting in New York; and, as is already manifest, the evidence shows that after their arrival there, Brown, on behalf of the defendants, questioned the accuracy of the accounts which were presented, claiming that they were erroneous and on a wrong basis. As a consequence, further statements were furnished, and still Brown was not satisfied. The amount to be deducted from the outstanding accounts was changed, and other arrangements made in regard to them. It is to be inferred from the plaintiff's evidence, and clearly shown by the defendant's testimony, that Brown was unwilling to consent to any sale,

unless the individual accounts were allowed ; and the plaintiff himself swears that he understood that it made a difference of $35,000 ; and he knew, at the time, that Brown got at this amount by putting it in as profits. Without any misapprehension therefore as to the nature of the transaction, the plaintiff agreed to purchase at the price demanded, and at his instigation proper papers were executed to perfect the sale. He was neither misled nor deceived. Brown demanded the sum named and refused to consent to any other terms or conditions. He testifies that he thought that the amount of business done and the capital used should have produced a larger amount than appeared upon the statement ; and that the sale was made, as far as the defendants were concerned, upon the grounds of an adjustment, and for the purpose of disposing of the interest of the parties, at what he supposed might be near the amount the defendants were entitled to, and without reference to the exact sum due ; and that after talking it over, they considered it was an approximate sum. However the plaintiff may have regarded the matter, it is not apparent, from an examination of the evidence, that the plaintiff and Brown, who represented the defendants, each considered the amount finally agreed upon as a statement which they regarded as entirely accurate, and an error which might be corrected upon the ground of mutual mistake. It was no more or less than an exchange of propositions for a sale, in regard to which each of the parties was bound to look out for his own interest, and not in the nature of a guaranty of the correctness of the statements. The plaintiff proposed to purchase. The defendants refused to sell, upon any such proposition, claiming that it was erroneous, and finally named terms which the plaintiff accepted. The plaintiff then took a transfer of the property, continued in possession and disposed of the same, and paid the notes given by him on the sale, as they from time to time afterwards became due, until all of them were taken up. The payments made were voluntary, and the plaintiff has never offered to return the property, or to place the defendants in the position

they occupied prior to the sale. In fact, this cannot now be done, by reason of the delay in bringing the action and the sale or disposition of the goods sold.

Under the circumstances existing, it is quite obvious that the plaintiff has made out no case for relief. Courts of equity will sometimes give relief in cases of mutual mistake, where there is a failure of the subject-matter of the sale; but the law does not demand that both parties shall be upon the same footing as to knowledge or information. It requires that each one should be vigilant, and should abstain from stating any fact tending to mislead or deceive the other. If the parties stand upon a footing of equality and no fraud is committed by either, each must abide by the contract, and each is entitled to the benefit of his own sagacity. (*Pidcock* v. *Bishop*, 3 B. & Cress., 605; *Elting* v. *Bank of U. S.*, 11 Wheat., 59, and cases cited.) There is no pretence of fraud in this case. Each of the parties had ample and full opportunity and an equal advantage in ascertaining the actual state of the accounts, and no deceit was practised. The plaintiff had a right to reject the proposal made, and in accepting it, he acquired no right to compel the defendants to account, if it turned out that he paid too much. It is difficult to see how the object of the plaintiff's action could be accomplished by an accounting, or on what basis it can properly and lawfully be conducted. What relief can the plaintiff have? Clearly the defendants could not be compelled to pay back, on the basis of the plaintiff's first statement. They expressly refused to sell upon any such statement, proposed another and a different one, which was accepted, and equity could not compel them now to accept what they had expressly rejected and refused to accede to. No other theory is suggested upon which the defendants can be made liable; and none exists either at law or in equity. In view of the facts, it is not apparent upon what equitable principle the plaintiff is entitled to relief; and if he ignorantly or negligently made a bad bargain, the law furnishes no remedy.

We think there was no fraud or mutual mistake or errors of fact, as the referee has properly found; and the various propositions to find, without considering them in detail, were either immaterial and therefore would not aid the plaintiff, or were not warranted by the evidence, and for these reasons, were properly refused.

We think the case was properly disposed of by the referee and the judgment should be affirmed.

All concur, RAPALLO and HAND, JJ., in result.

Judgment affirmed.