**OWEN et al. v. FLEMING–STITZER ROAD BUILDING CO. et al. (No. 10100.)\***

(Court of Civil Appeals of Texas. Fort Worth. Feb. 10, 1923. Rehearing Denied March 24, 1923.)

**1. Contracts ⊚⇒10(4)—Road building contract held not unilateral.**

A road building contract *held* one under which the county was to sell its bonds to the road building company, and the company to buy and pay for at least $4,300,000 of the authorized issue of $4,500,000 of bonds, so that it was not unilateral; and in any event, having been in a material part executed, not objectionable for lack of mutuality.

**2. Counties ⊚⇒153½—Highways ⊚⇒113(3)—Contract to construct not invalid as lending county credit, nor as to arbitration clause.**

Highway construction contract, providing that the county should furnish the contractors' equipment, to be paid for by the contractors as the work progressed, and that inability of the contractors and engineer to agree on the equipment necessary should be settled by arbitration, was not invalid as an attempt by the county to lend its credit for the contractors' benefit, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 2241, 6963, and Local & Sp. Laws, 3d Called Sess., 36th Leg. (1920) c. 37, nor as committing to arbitrators powers which could be exercised only by the commissioners' court; the provision as to arbitration in any event being severable from the remainder of the contract, as incidental and collateral thereto.

**3. Highways ⊚⇒113(3)—Construction contract held not invalid in providing for full payment on completion of each 3-mile section.**

In view of Local & Special Laws, 3d Called Sess., 36th Leg. (1920) c. 37, § 25, as to bond of highway contractors, a highway construction contract dividing the work into sections of three miles each, to be paid for in full as completed, was not invalid as insufficiently safeguarding the county's interests.

**4. Highways ⊚⇒113(3)—Construction contract requiring county to pay premium on contractors' bond held not invalid.**

A highway construction contract requiring the county to pay premium on contractors' bond *held* not invalid.

**5. Highways ⊚⇒113(3)—Construction contract held not indefinite.**

A highway construction contract *held* not invalid as indefinite as to what county bonds were required to be purchased by the contractors or as to the amount and character of work.

**6. Highways ⊚⇒113(3)—Construction contract not invalidated by illegal selection of depository of county road bonds proceeds.**

A highway construction contract *held* not invalidated by the alleged illegal selection by the commissioners' court of a depository for the proceeds of county road bonds sale provided for in the contract, the contractors not being alleged or shown to be cognizant of the facts.

**7. Highways ⊚⇒113(3)—Construction contract held not invalidated by acts of county officials after its completion.**

A highway construction contract was not invalidated by acts of county officials subsequent to its execution, such as alleged wrongful hypothecation of road bonds by county judge and another, such acts occurring after the making of the contract; and evidence thereof was immaterial.

**8. Highways ⊚⇒113(3)—Construction contract held not invalidated by payment of excessive salary to county engineer.**

A highway construction contract *held* not invalidated by the fact that the county contracted to pay the engineer $10,000 a year salary, there being no showing that the salary was exorbitant.

**9. Highways ⊚⇒113(3)—Construction contract held not invalid because partners in contracting firm sold their interest to remaining member of firm.**

A highway construction contract *held* not invalidated by the fact that three members of the contracting firm sold their interests to the remaining member of the firm, there being no showing that the partners selling out occupied any relation of special trust and confidence towards the county, or that by their assignment they were released from liability, and that by the assignment of their interests the county would be prejudiced.

**10. Highways ⊚⇒130½, New, vol. 12A Key-No. Series—Receivership for highway contracting firm held not warranted.**

In taxpayers' suit attacking a county road construction contract, *held* that a receivership for the contracting firm was not authorized, where the firm was not shown to be insolvent, although one of the partners therein had become by purchase from the other partners the sole owner of the construction contract and had failed to give a rendition of his property.

**11. Judges ⊚⇒44—Judge trying taxpayers' suit attacking road construction contract held not disqualified.**

In taxpayers' suit attacking a county road construction contract, *held* that the judge trying the case, a property taxpayer of the contracting county, was not disqualified, the validity of the bonds for the road construction and of the tax levies made to secure their payment not being involved.

**12. Appeal and error ⊚⇒1160—County officers held not authorized to withdraw defenses of predecessors in taxpayers' suit.**

In taxpayers' suit attacking a county road construction contract, *held* that, where members of the commissioners' court who became such subsequent to successful defense in the trial court expressed a desire to withdraw the county's defenses, and requested the court of appeals to either reverse or reverse and render the judgment below, such request could not be granted by the Court of Appeals.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Suit by Briggs Owen and others, taxpayers of Eastland county, against Fleming-Stitzer Road Building Company and others to annul and have declared void a contract between Eastland county and the named defendant. Judgment for defendants, and plaintiffs appeal. Affirmed.

Grisham Bros., Chas. C. Robey, and J. R. Stubblefield, all of Eastland, for appellants.

Goree, Odell & Allen, of Fort Worth, and Burkett-Orr & McCarty, of Eastland, for appellees.

CONNER, C. J. This suit was filed September 12, 1921, by Briggs Owen and others, taxpaying citizens of Eastland county, against C. R. Starnes, county judge of Eastland county, G. A. Davisson, W. R. Fleming, Frank E. Stitzer, Saunders Gregg, and the Fleming-Stitzer Road Building Company, and Eastland county. The original petition, stating the basis for the relief sought, covers some 39 pages of the transcript. The purpose of the suit, however, is thus stated by appellants in their brief:

"They filed this suit for the purpose of canceling and having declared null and void a purported contract alleged to have been entered into by and between Eastland county and Fleming-Stitzer Road Building Company."

The grounds for the relief sought were numerous and will be hereinafter noticed, so far as deemed material. The defendants, other than Eastland county, appeared and by answer presented numerous special exceptions to the plaintiffs' petition, admitted the truth of certain paragraphs thereof, specially denying a number of others, and set forth additional explanatory and defensive circumstances so extended in form and matter as to preclude a literal copy, but which, in so far as material, may be inferred from what we shall say in disposing of the case.

Eastland county, by its county judge, C. R. Starnes, and E. J. Webb, J. W. Camp and M. G. Robinson, members of the commissioners' court at the time, also answered with admissions, special denials, and new matter not thought necessary at this time and place to be more particularly noticed.

A trial before a jury was had on the 13th day of October, 1921. The court sustained a number of the special exceptions to the plaintiffs' petition, heard evidence offered by the parties, after which he gave to the jury a peremptory instruction to find for the defendants. Judgment was rendered accordingly, and from such judgment the plaintiffs have duly prosecuted this appeal.

The transcript before us contains 245 pages; the statement of facts, 91 pages; appellants' brief consists of 78 typewritten pages, presenting 120 assignments of error,

64 separate propositions, 37 bills of exception and 31 citations of authority, followed by statements from the record and arguments. The answering brief of appellees consists of 71 pages, and an argument of 12 pages. It will thus be seen that it is wholly impracticable for this court to undertake to specifically discuss each of appellants' assignments of error, but each have been carefully considered, and answering in a general way, as we feel that we must, it may be stated that the first 25 assignments of error, complaining of the action of the court in sustaining certain special exceptions, are directed to the asserted invalidity of the contract. Assignments of error Nos. 30, 31, 32, 33, 35 to 116, inclusive, complain of the action of the court in excluding offered testimony and answers to interrogatories. Assignment No. 34 complains of the action of the court in admitting certain testimony. Assignments 117, 118, and 119 complain of the verdict of the jury as unsupported by the evidence; and assignment 120 complains of the action of the court in holding that the Honorable E. A. Hill was not disqualified to try the case.

It is agreed that the Honorable E. A. Hill, the judge who tried the case, was a property tax payer of Eastland county; that plaintiffs, naming them, were property tax paying citizens of Eastland county, and as such entitled to maintain the suit; that defendant C. R. Starnes was the duly elected, qualified, and acting county judge of Eastland county, and that E. H. Webb, J. W. Camp, M. G. Robinson, and Henry Stubblefield were the duly elected and qualified commissioners of said county; that during the fall of 1919 an election was duly and lawfully held in Eastland county and the returns duly and lawfully canvassed, and at said election the legally qualified property tax paying voters of Eastland county voted to issue good road bonds aggregating the sum of $4,500,000 for the purpose of "building, constructing, improving, laying out and opening up of good roads in Eastland county"; that of the bonds so voted and authorized to be issued a sale, or purported sale, of $1,876,000 had been made; and that a tax had been duly levied by the commissioners' court of Eastland county for the purpose of providing a sinking fund to pay said bonds and the interest thereon.

It was further agreed that on June 8, 1920, the commissioners' court, consisting of said county judge and four commissioners named, were in session and passed the following order:

"Whereupon there coming on to be considered by the court the various bids of the several contractors to construct the system of good roads in Eastland county, Texas, as the same has been laid out in the plans and specifications on file in the office of W. R. Eccles, county engineer, which said system is to be constructed

from the proceeds of the four and one half million dollars in bonds authorized by an election on September 27th, 1919, and whereupon it appearing to the court that the Fleming-Stitzer Road Building Company has filed in said county its proposal to take the bonds of said county at par and accrued interest, and build from the sale of said bonds the system of roads designated by the commissioners' court of Eastland county, and the court considering all bids presented therein is of the opinion, and so finds, that the bid of said Fleming-Stitzer Road Building Company is the lowest and best reasonable bid to said court under the advertisement that has just been heretofore published in the papers of Eastland county, Texas, in the Dallas News and other papers, and the court does accept said proposal as the same does here below appear, under the terms and conditions of the contract hereinafter set out, signed by all members of said commissioners' court and all persons interested in said Fleming-Stitzer Road Building Company, to wit:

"State of Texas, County of Eastland.

"Know all men by these presents: This agreement this day entered into by and between Eastland county, Texas, acting by and through its duly authorized and empowered representatives, the commissioners' court of Eastland county, Texas, party of the first part, and the Fleming-Stitzer Road Building Company, a copartnership, their executors, administrators, successors, heirs and assigns, party of the second part, witnesseth:

"Whereas, the county of Eastland, Texas, has heretofore been authorized and empowered to have constructed a system of roads and highways in Eastland county, Texas, and has heretofore been further authorized and empowered to issue bonds in the aggregate sum of four million five hundred thousand dollars ($4,-500,000.00), with which to pay for having said roads and highways constructed in Eastland county, Texas; and

"Whereas, plans and specifications for building and constructing the said roads and highways in Eastland county, Texas, have been prepared by and are on file in the office of W. R. Eccles, county engineer of Eastland county, Texas; and

"Whereas, heretofore on the 8th day of June, A. D. 1920, Fleming-Stitzer Road Building Company submitted and filed with the honorable commissioners court of Eastland county, Texas, a proposal to build and construct the said roads and highways according to the plans and specifications prepared and on file with the said County Engineer of Eastland county, Texas, which said proposal of the Fleming-Stitzer Road Building Company is as follows."

The proposal of the Fleming-Stitzer Road Building Company referred to in the foregoing quotation was made part of the order and, in so far as material, was, in substance, that the contractors should receive monthly payments of 90 per cent. of the contract price of the work done during the preceding month, based upon the estimate of the engineer in charge; that if a surety bond was required of the contractors the premium of such bond should be paid by the county. That the work should be divided into sections of three miles, and each section, as the same was completed, should be accepted and paid for in full by the county; "that at the commencement of the work the county shall furnish the contractors such outfit of equipment necessary to carry on and complete the work, and upon completion of the contract work such equipment shall become the property of the contractors by the cost thereof being deducted by the county in equal installments out of the monthly estimates paid to the contractors as provided for," etc.; that the contractors were not to be responsible for uncompleted roads damaged by traffic; that the contractors, if awarded the contract, "would take the bonds at par value with accrued interest in payment of all roads or highways completed and accepted by your engineer, this proposal is made conditioned upon the entire contract being awarded" to the contractors. The proposal further declared that the undersigned bidders were the only persons or parties interested in the proposal and that it was made without collusion with any other person, firm or corporation; that the contractors had "carefully examined the form of contract, instructions to bidders, profiles, grades, specifications, and the plans therein referred to, and have carefully examined the location, conditions, and classes of materials of the proposed work" and agreed that they, the contractors, would provide all the necessary machinery, tools, apparatus, and other means of construction and would do all the work and furnish all the materials called for in the contract and specifications in the manner prescribed therein and according to the requirements of the engineer as therein set forth. A schedule of prices at which the contractors proposed to do the work was then given. The prices specified were upon what was termed a unit basis, that is to say, the price for clearing and grubbing was $125 per acre, for trimming and cutting posts and placing in piles on the right of way 25 cents each, 40 cents per cubic yard for "barrow excavation," $2.30 per cubic yard for solid rock excavation, for loose rock excavation $1.50 per cubic yard, for earth roadway excavation 48 cents per cubic yard, etc. The contractors further pledged themselves to complete the work in full by June 30, 1922, and to secure a proper compliance with the terms and provisions of the contract and to insure and guarantee the work until final completion and acceptance, a bond, as the proposal recites, "in the amount of an agreed sum to secure a proper compliance with the terms and provisions of this contract and to insure and guarantee the work until final completion and acceptance, is hereto adopted and made a part hereof."

The order thereupon further recites that the proposal and conditions annexed thereto were accepted "by unanimous verdict of the

commissioners' court of Eastland county, Texas," and further reads—

"that now, therefore, for and in consideration of the premises, and to reduce to writing in one complete instrument the contract and agreement of the parties hereto relative to the building and construction of said system of highways in Eastland county, Texas, by the Fleming-Stitzer Road Building Company and the compensation to be paid by Eastland county, Texas, to the Fleming-Stitzer Road Building Company, the parties hereto mutually agree and contract in the following respects, to wit:

"1. The contracting party of the second part herein agrees and obligates himself to do, perform, and furnish at his own cost and expense all the labor and material necessary for the construction of the said system of highways in Eastland county, Texas, in accordance with the plans and specifications heretofore prepared by W. R. Eccles, county engineer of Eastland county, Texas, copy of which is attached hereto and made a part hereof, and upon the terms and conditions set out in the proposal and the conditions annexed thereto of the Fleming-Stitzer Road Building Company, which have heretofore been fully set out in this instrument.

"2. The party of the first part, Eastland county, Texas, agrees, promises, and obligates itself to pay to the contractor, party of the second part herein, for all labor and material performed and furnished in the building and construction of the said system of roads and highways as per the plans and specifications attached hereto, upon and in accordance with the terms and conditions set out in the proposal and conditions annexed thereto, made by the Fleming-Stitzer Road Building Company, and which have been fully set out herein, reference to which proposal and conditions annexed hereto is here made for a full, complete, and accurate list of the prices to be paid for each unit of work and material performed and furnished by the party of the second part in the construction and building of the said system of highways.

"3. It is agreed that payment by the party of the first part to the party of the second part, under the terms of this instrument, shall be governed by the following stipulations:

"(1) That party of the first part agrees to pay and the party of the second part agrees to accept, for all work and material performed and furnished in construction of the said system of highways in Eastland county, Texas, the bonds which the county of Eastland has been authorized and empowered to issue in payment therefor.

"(2) Payment by the said bonds shall be at par value thereof together with accrued interest thereon to the date of such payment. In this connection it is understood by the parties hereto that Eastland county shall receive the full par value for the said bonds together with the accrued interest thereon.

"(3) The party of the first part agrees to sell and deliver any part or portion of the said $4,500,000.00 issue of bonds to any purchaser furnished.

"(4) Should all or any part or portion of the said bond issue of $4,500,000.00 be sold by the party of the first part upon the conditions and terms herein named then the proceeds of such sale shall be held by the party of the first part in such depository as it may elect and payments to the party of the second part shall thereafter be made out of the money realized from the said sale of the bonds as aforesaid in lieu of the payments by the bonds themselves. In the event that it shall become necessary to alter or change any of the provisions of this contract in order to comply with the state and federal aid provisions, it is agreed that a separate and supplemental contract shall be made between the parties hereto, relative to any conditions or alterations; such contract to be in writing and attached to this instrument.

"(5) It is agreed that the party of the first part shall have the right to change quantities shown in the plans and to change types of roads or locations of same if deemed necessary, but the party of the second part shall be paid for the additional quantities upon the per unit prices set forth in the proposal herein set out, and which is made a part hereof.

"(6) It is agreed that in the event the party of the first part furnishes to the party of the second part explosives for the rock work, then in such event the party of the second part agrees to deduct from the cost of such rock work or other work an amount equal to the amount saved by them by reason of the said explosives being furnished to them by the party of the first part.

"(7) It is agreed that the party of the second part shall rent all federal equipment acquired by the party of the first part which can reasonably be used on the said work and to pay therefor such reasonable rental as may hereafter be agreed upon by the parties hereto. And in the event that the parties hereto are unable to agree upon what is a reasonable rental therefor then such rental shall be decided by a board of three arbitrators, one to be selected by the party of the first part, one to be selected by the party of the second part, and the two said arbitrators so selected to select a third arbitrator and the award of the majority of two of the members of the said board of arbitrators shall be binding upon the said parties hereto.

"(8) The party of the second part hereby agrees to start operations for the commencement of the said work herein contracted for on or before June 15, 1920, and to complete the said work not later than June 30, 1922, subject to delays occasioned as the result of causes beyond the control of the parties of the second part, all of which is set out in the proposal and conditions made by the party of the second part and which are included in this instrument.

"(9) It is further agreed between the parties hereto that the party of the second part shall be obligated to build and construct only so much of that portion of the system of roads and highways called for by the plans and specifications on file in the office of the engineer of Eastland county, Texas, and hereinbefore referred to, as can and will be paid for the bond issue of $4,500,000.00 and the accrued interest thereon, and when the said party of the second part shall have performed and furnished the labor and material upon the unit plan herein designated and accepted to the extent of $4,500,-000.00 with accrued interest thereon, then the

party of the second part shall be under no obligation and shall not be bound to construct any further roads or highways for the benefit of Eastland county, Texas, inasmuch as the money with which Eastland county, Texas, is to pay for the construction of the said roads and highways will then be exhausted.

"(10) It is agreed that the party of the second part shall execute within thirty (30) days from the date hereof a good and sufficient bond in the sum of $————, payable to the party of the first part conditioned that the party of the second part will faithfully perform and discharge all the obligations herein assumed."

The contract as above quoted was duly signed by the county judge and each of the four commissioners, as parties of the first part, and Fleming-Stitzer Road Building Company, by G. A. Davisson, W. R. Fleming, Frank E. Stitzer, and Saunders Gregg, as parties of the second part.

The contract as above set out, as appears by order of the commissioners' court, was amended on the 14th or 15th day of June. The amendments, in so far as deemed to be material, were:

"(1) That the contractor should be paid in cash for his work upon monthly estimates approved by the engineer and the commissioners' court.

"(2) The party of the second part agrees and obligates themselves 'to buy and pay for cash at par and accrued interest the $4,320,000.00 road bonds, said bonds to bear 5½ per cent. interest and to mature approximately as the one million dollars of said bonds now issued under order of the commissioners' court of Eastland county, Texas, dated Jan. 12th, 1920." And

"(3) The said party of the second part agrees that they will take and pay for said bonds upon the following terms and in the following manner not to exceed the sum of two million dollars of par value of said bonds with accrued interest thereon on or before Jan. 1, 1921, and under the same conditions as to interest and maturity, not to exceed the additional one and one-half million dollars par value of said bonds with accrued interest thereon prior to August 1, 1921, and the balance of said bonds the same interest and maturities as above specified at the option of the second party.

"(4) Said bonds shall be taken by said contractors in amount not less than the estimates due for work done plus an additional amount reasonably necessary to care for engineering right of way and general overhead.

"(5) Said party of the first part agrees that it will sell and deliver said bonds in such amounts and at such city or cities within the United States as said parties of the second part shall demand after reasonable notice given free of expense, printing, delivery," etc.

"(10) It is further agreed by and between the parties hereto that the contractor and the engineer agree upon the machinery and equipment reasonably necessary, and in the event that they are unable to agree the contractor shall select one man and the commissioners' court shall select one man and the two shall select the third. Such board shall be a board of arbitrators and shall pass upon the necessity, the value, and the ratio of installments upon which said equipment shall be paid for, such award and finding shall be binding on both parties hereto."

The amendment further provided that the word "strike," as used in the original contract, should mean "general strikes"; and that by the words "inclement weather" should mean "unusual weather"; that the clause of the original contract relieving the contractors of responsibility for damage to the roads by traffic should mean that they were not to be accountable for such damage "if such traffic is authorized and permitted upon said roads by said commissioners' court." The amendment further provides that the term "equipment," as used in paragraph 6 of the proposal, should not mean small tools, such as shovels, scrapers, fresnoes, livestock, etc., unless otherwise agreed upon, and that all equipment was to remain the property of the first party until fully paid for, payments therefor to be in equal monthly installments. The amendment contains the following further provisions:

"(11) It is understood and agreed that the party of the second part shall use stone from a local quarrying site or from a commercial plant, whichever method will result in the particular roads being built for a less total cost.

"(12) It is understood and agreed by and between the parties hereto that approximately the sum of $500,000 will be necessary and used by the party of the first part in the payment of the necessary engineering, right of way, overhead, and other expenses and that this amount or so much thereof as is necessary shall be retained out of moneys coming into the hand of party of the first part.

"(13) Party of the first part hereby reserves the right to change the amount of asphalts and stone or other quantities or the location or type of the roads as the engineer may deem necessary and said party of the second part shall not be entitled to any extra remuneration on account of extra work or anticipated profits.

"(14) It is further agreed that in the event that in order to meet the requirements of the state and federal aid the contract heretofore entered into, by and between the parties hereto, is not approved by the state and federal authorities, then in that event the second party shall not be required to fulfill such part and portions of said contract as would cover the work performed under state and federal aid and shall not be required to purchase and pay for a corresponding amount of said bonds."

The contract as so amended was thereupon by formal order of the commissioners' court duly entered upon its minutes "in all respects ratified, confirmed and approved," the order being signed by said county judge and the four commissioners heretofore named.

[1] The defendants' exceptions to the plaintiffs' petition which the court sustained, raised the question of whether the road building contract under consideration was invalid, as appellants alleged and now urge, on the

ground that it provided for the sale of good road bonds of Eastland county, "not for cash, but at a future time"; and in that it gave to the road building company "an option to purchase $1,000,000 of said bonds or to decline to purchase the same"; and in that the contract was "unilateral." We are of the opinion that the contract cannot be set aside on the grounds stated. As we read the contract, it specifically and certainly obligates the county to sell, and the road building company to buy and pay for in cash, at least $4,300,000 of the authorized issue of bonds. It cannot, therefore, be said that the contract is unilateral. But if so, the record shows plainly that the contract has been in a very material part executed, which fact would preclude appellants from any relief on that ground. Hayes v. Penn. Mut. Life Ins. Co., 228 Mass. 122, 117 N. E. 191; Stettheimer v. Killip, 75 N. Y. 282; Susquehanna Ins. Co. v. Swank, 102 Pa. 17; Bible v. Centre Hall Borough, 19 Pa. Super. Ct. 136; Diman v. Providence, etc., R. Co., 5 R. I. 130; Star Glass Co. v. Longley, 64 Ga. 576; Phillip v. Gallant, 62 N. Y. 256.

Nor can it be said, we think, that the contract, when construed as a whole, is but an obligation on the part of the county to sell and on the part of the contractors to take the bonds at a future time and at the option of the contractors. The obligation for the sale and purchase seems plainly to comprehend the entire issue to be received and paid for by the contractors at the several times stated. By reference to paragraph 3 of the contract, as quoted above, it will be seen that the contractors specifically agreed that they would take and pay for the bonds not exceeding the sum of $2,000,000 on or before January 1, 1920, and another $1,500,000 prior to August 1, 1921, the balance of the bonds to be taken and paid for at the "option" of the contractors. We think the option here mentioned relates to the time at which the bonds shall be taken and paid for, and is not to be construed as giving the contractors an option to buy or not to buy the remainder. This is plainly indicated by the next paragraph of the contract which provides that "said bonds," evidently having reference to the entire issue, "shall be taken by said contractors in an amount not less than the estimates due for work done, plus an additional amount reasonably necessary to care for engineering, right of way, and general overhead." Construing the two clauses together, it seems to us that the contract means that at all events the contractors are to take $3,500,000 of bonds on or before August 1, 1921, and thereafter to receive and pay for bonds from time to time in amounts in no event to be less than the estimates due for work done, etc., thus providing for a ready and sure means for the continuous construction of the system of roads contemplated at the time.

[2] The contract is further assailed on the ground that it provides that "at the commencement of the work the county shall furnish the contractors such outfit of equipment necessary to carry on and complete the work," etc., and in the same connection it provided that the contractor and engineer shall agree upon the machinery and equipment reasonably necessary, and in event they were unable to agree that then the difference or controversy should be settled by a board of arbitrators, as provided for, the contention being that the county thus attempted unlawfully to lend its credit for the benefit of the contractors, and to commit to a board of arbitrators powers which could alone be exercised by the commissioners' court. We are of the opinion that the contract as a whole cannot be set aside because of the provisions referred to. Art. 2241, V. S. Tex. Civ. Statutes, confers the power upon commissioners "to lay out and establish, change and discontinue public roads and highways." And it has been held in the case of Lasater v. Lopez (Tex. Civ. App.) 202 S. W. 1039, writ refused, that the power thus expressly given to the commissioners' court to lay out and establish public roads carry with it by implication all such other powers as are reasonably necessary to carry into effect the granted authority. See, also, article 6963, V. S. Tex. Civ. Statutes, relating to public roads, where it is expressly provided that:

"The commissioners' court of any such county is authorized to purchase or hire all necessary road machinery, tools, implements, teams and labor required to grade, drain or repair the roads of such county, and said court is authorized and empowered to make all, reasonable and necessary rules, orders and regulations not in conflict with law for laying out, working and otherwise improving the public roads, and to utilize the labor and money expended thereon, and to enforce the same."

Moreover, the 36th Legislature, evidently with a view of its application to the extensive road building plan under contemplation by the commissioners' court and people of Eastland county at the time of the authorization of the $4,500,000 of road bonds, enacted a special law creating a road system from Eastland county. See Local & Special Laws, 3rd Called Session, 36th Legislature, page 107 et seq. In section 1 of that act, authority is given to the commissioners' court to "put into effect, such rules, regulations, plans and system as it may see fit, for laying out, widening, draining, grading, constructing, building, repairing and maintaining the public roads of said county." The next section provides that subject to the provisions of the act, said court "shall have power, and it shall be its duty, from time to time to purchase any and all such teams, tools, implements, machinery, material and supplies, and to employ such hands and teams and to make on behalf of said county all

such contracts as said court may deem proper and reasonably necessary to carry into effect the provisions of this act." In section 33 of the act, it is declared that it shall be construed as cumulative of all general laws of this state, on the subject treated of in the act when not in conflict with it. Under the powers thus so broadly given to the commissioners' court of Eastland county, we see no reason why it might not, as it did in furtherance of the construction of the system of roads under contemplation, agree to purchase and pay for such equipment not possessed by the contractors as was found necessary to the undertaking. The provision was evidently not intended as a gift to the contractors, for it is expressly provided that the contractors should, in the mode specified, pay for all such material purchased by the county. The power to make and put into effect "such rules, regulations, plans, and system as the court might see fit" would seem also to be broad enough to authorize the court to adopt the method it did for determining, in the event of a difference, the kind and character of machinery or equipment reasonably necessary. It is to be presumed that the members of the commissioners' court were not qualified as experts on the subject to which the provision relates, and therefore doubtless could more safely trust its engineer and another to be chosen by the commissioners' court. We find nothing in the special act referred to which expressly prohibits such a method.

Moreover, if in any event it must be said that the provision providing for arbitrators is invalid, as committing to a board of arbitrators an exercise of the powers given to the commissioners' court alone, yet it is evident that it, as also the provisions relating to the purchase of material, the payments of premium for bonds, and like provisions, is but a minor incident which has only a collateral relation to the main contract, and there is nothing in the record which shows that the county in fact ever purchased any machinery or materials for the contractors, or that any necessity ever arose for the settling of the dispute provided for. Williston on Contracts, vol. 3, § 1752, is to the effect that a collateral provision of the kind under consideration, in order to invalidate the entire contract, must appear to be a part of a general scheme to bring about an unlawful result, but that:

"Where the contract is merely collaterally connected with an unlawful purpose or act, the rule generally adopted is that where the contract is only remotely connected with an unlawful transaction and rests upon an independent and legal consideration, and the plaintiff can establish his case without relying upon the unlawful transaction, the contract is valid."

We think the language quoted from Williston applicable here, for we think it cannot be said with any show of reason that the

provision of the contract providing for arbitrators, wholly contingent as it is, indicates a purpose to bring about an unlawful result.

[3] The contract is further assailed on the ground that it provides that the work should be divided into sections of three miles each, and that as each section was completed and accepted, it should be paid for in full by the county. In aid of this connection, appellants cite a portion of section 25 of the Special Road Law, hereinabove referred to. The portion of the section relied upon reads:

"Said court shall require such contractor to enter into a bond in an amount to be set by said court, with two or more good and sufficient sureties or surety company, payable to the county judge of his county or successors in office, in trust, for the use of the road and bridge fund of said county, to be approved by said court, and conditioned for the faithful performance of such contract."

Another portion of the section provides, in substance, that contracts of the kind must be let after advertising for bids, and shall require the contractor—

"to enter into a bond in an amount to be set by said court, with two or more good and sufficient sureties or surety company, payable to the county judge of his county or his successors in office, in trust, for the use of the road and bridge fund of said county, to be approved by said court, and conditioned for the faithful performance of such contract. No such contract shall become effective until the bond herein required shall have been filed and approved by the court."

It is not alleged by appellants in the case before us, nor is it shown in the evidence, that the commissioners' court of Eastland county failed to require the bond contemplated in the quotation from the section we have made, and we think we must assume that the commissioners' court did its duty in this respect, and when we take into consideration the fact, which it seems to us the record plainly indicates, that the commissioners' court was undertaking to provide for the construction, not only of a single road, but of an entire system of roads for the county, that it was within the power and discretion of the commissioners' court, in furtherance of the general object, to provide, as the contract does, that upon all estimates of the county engineer in favor of the contractors, 10 per cent. should be retained as the law provides, but that upon the final completion and acceptance of a given road or a specified part of a road, full payment might be made. The contract provides for the expenditure of the entire $4,500,000 of bonds in the construction of the system of roads under contemplation, 10 per cent. of that sum amounts to $450,000, and a contract which exacted the retention of the full sum until the final completion of every road and all sections of every road would certainly be burdensome and have a tendency to exclude all bidders

save those possessed of great capital. The provision, therefore, for the full payment of the completed sections rendered the contract less onerous, and calculated to induce a greater number of bidders and more favorable contracts for the county.

There is no allegation, nor does it appear in the evidence that a section of three miles is too limited in extent or that the bond and personal responsibility of the contractors, together with the retention of the 10 per cent. of estimates on uncompleted roads, are insufficient to reasonably safeguard the interest of the county. This is particularly true, we think, inasmuch as it is nowhere alleged in appellants' petition, nor does it so appear in the evidence, as will be seen from our later discussion, that the county at any time ever parted with the actual control of its bond until it had received or been credited for its full par value and accrued interest.

[4] The objection to the contract, raised by several assignments of error that it bound the commissioners' court to pay a premium for the bond of the contractors, in event one from a surety company was required, and to deliver the bonds to such persons and places as the contractors should direct, is sufficiently disposed of, we think, by what we have said in disposing of the objections to the provisions relating to the commissioners' purchase of machinery, etc., and to submit disputes arising therefrom to the arbitration of selected persons.

[5] The contract is further attacked upon the grounds that it is indefinite and uncertain in that it fails to specify "what bonds are required to be purchased by the Road Building Company and uncertain as to the amount of work or the character of work which is to be done." We think it plain that the contract is not subject to these objections. It plainly specifies that the contractors shall at the specified price take the entire issue of bonds, and it as plainly, by reference, makes the maps, profiles, specifications, and estimates for the work to be done under such contract a part of the contract, and there is no allegation that there were no maps, profiles, etc., as required by section 24 of the Special Road Law, that had been considered and adopted by the full court. In a sense it is true that the precise number of cubic yards of dirt, of excavation, of grading, etc., to be done and paid for, as specified in the contract, could not, in the nature of things, be definitely ascertained; and a construction of the contract which would nullify it, because the precise amount of work necessary in the accomplishment of the construction of the entire system was not stated, would be unreasonable.

[6] Appellants quote that provision of the contract to the effect that if all or any portion of the bond issue be sold by the county, the proceeds of the sale shall be held by the county "in such depository as it may elect,"

and it was alleged that on June 14, 1920, the commissioners' court, by an order made and entered on its minutes, selected the City National Bank of Eastland as the depository of the funds which might arise from the sale of the good roads bonds, and, at the time of making of said order, R. C. Starnes, county judge, was a stockholder in said bank, and "that the commissioners' court of Eastland county selected the said City National Bank of Eastland as such depository without advertising for bids and said selection was made in order that C. R. Starnes might profit pecuniarily thereby." All of which, it is insisted, invalidates the contract between the county and the contractors for the building of the roads. It is not made very clear that the order selecting the City National Bank as the depository of the funds mentioned was made prior to the final execution of the road building contract. True, the order referred to bears date of June 14, 1920, and the amendment to the contract, which was approved, bears date of June 15, one day later, but by reference to the order of the commissioners' court, adopting and confirming the road building contract as amended, it will be seen that the date of that order is June 14, 1920, thus authorizing the inference that the date of the amendment was incorrectly given as the 15th, or that the date of the order of ratification was not on the 14th, as the order specified. Without a clear showing to the contrary, the inference is not unreasonable that the orders selecting the depository and of the final approval of the road building contract were not on the same day, but that the selection of the depository was after the final execution of the road building contract. But however this may be, the contract does not bind the commissioners' court to select the City National Bank as its depository. and there are no allegations to the effect that at the time of making the order the contractors had knowledge of the alleged fact that the county judge owned stock in the City National Bank, and while it is alleged that the commissioners made the selection for the purpose of benefiting the county judge, this is but a conclusion and wholly insufficient to require the nullification of the building contract. Nothing is better settled than that fraud, to be available as a weapon of offense or of defense, must be made apparent by facts alleged and not by mere conclusions of the pleader. If in truth the county judge was interested in the way asserted, he was subject to the pains and penalties provided by the law for such causes. But the formal order of the commissioners' court, not necessarily a part of the road building contract, cannot be attacked in the collateral way in which it is attempted, especially to the detriment and loss, perhaps, of the contractors not alleged or shown to be cognizant of the facts. The objection that the selection of the depository was not made after advertise-

ment, as generally provided by law, may be disposed of for like reasons. The evidence shows that another bank had theretofore been formally selected and still remained the depository for the general funds of the county, and that said bank indicated its desire to be relieved of the contract in so far as it would be responsible for the proceeds of the bond issue. Whereupon the order under consideration for the new selection was made. Under such circumstances and to provide for such an emergency under laws hereinbefore referred to, we think that the commissioners' court could lawfully select another depository. We make this reference to the facts, not because they appear on the face of the appellants' petition, but as an illustration of an emergency under which the general law requiring advertisement for bids would not apply.

[7] Appellants further allege that in July, 1921, the county judge, C. R. Starnes, and one S. D. Young hypothecated with the National Bank of Chicago $50,000 of the road bonds, and this circumstance is relied upon as invalidating the contract under consideration. A sufficient answer to this contention would be that however invalid and wrongful the acts of the parties named were, they occurred over a year after the making of the road building contract, and we cannot see how such acts can be invoked as invalidating the contract. The purpose of the contract was to accomplish the building of the system of roads that had been planned, and not to regulate the incidental powers that the parties to the contract might use in accomplishing the main purpose. A misuse or an abuse of the incidental powers might call for restraining orders which would prevent abuses, but such practices, if any, ought not to be permitted to entirely nullify and defeat the main purpose of the undertaking.

As before indicated, numerous objections were made to the exclusion of evidence, and that we may the more intelligently weigh the objections, we think it will be well to briefly state the condition of the evidence as actually received and heard by the court. Summarizing the testimony of the county treasurer, Prichard, the county judge, Starnes, and others, it appears that the bonds as issued were deposited in the county depository, thereto the receipt of the county treasurer was attached, reciting full payment of the bonds at their par value and accrued interest, a blank being left in the receipt for the amount of the accrued interest. The instructions to the bank were to the effect that the bonds and receipt should be retained until a purchaser was found therefor. The accrued interest was figured at the time of the sale and upon receipt by the bank of the actual cash received for the bonds, plus the accrued interest, was deposited in the bank to the credit of the treasurer, and the bonds together with the treasurer's re-

ceipt reciting full payment, etc., were delivered to the purchaser. The evidence is not very specific, but tends to show that the first $1,000,000 of bonds sold were purchased by a Houston firm for 90 cents on the dollar and accrued interest.

The difference between the par value and the 90 cents was charged up on the books of the county against the contractors. The sale of the $1,876,000 bonds were negotiated in Chicago and sold for 84 cents on the dollar, plus accrued interest, the cash being as before credited to the treasurer of Eastland county, and the difference between the 84 cents and the par value being charged against the contractors. As shown by the evidence, it was the order of the commissioners' court that at no time were the bonds to be permitted to go out of the actual possession and control of the county depository until sales were made, presumably as negotiated by the contractors and their agents.

Among other things, appellants sought to show that of the $1,876,000 of bonds disposed of in Chicago, $50,000 of the bonds had been hypothecated by one Sam D. Young and the county judge, Starnes. As shown by the record, it appears that the second $1,000,000 of bonds had been transported to Chicago and deposited in a Chicago bank, with receipts as before indicated, and that for the purpose of raising funds for immediate use, as we assume, Young gave his personal note for $35,000 and secured the same by attaching thereto the $50,000 of bonds mentioned. In this connection, however, it further appears that the cashier of the depository bank, as per instructions by wire from S. D. Young in Chicago, forthwith credited the road building fund of Eastland county with $42,664.58, presumably the $35,000 received by Young on his note plus the accrued interest due on the bonds, and issued to the treasurer of the county a deposit slip therefor, the difference between the amount for which the credit was given and the par value and accrued interest due on the $50,000 of bonds being charged against the contractors. We fail to see the relevancy of this transaction to the issue of whether the road building contract at its inception was invalid. Evidence recited in a bill of exception is that Young was acting as the agent of the contractors, and the fact that the county judge may have consented to and permitted an indirect disposition of the $50,000 of bonds in this way does not seem to have resulted in any ultimate loss to the county. The county was in effect given their full par value with accrued interest, and the fact that the credit was so given to the county upon a telegram from Young, and the deposit of the money in a Dallas bank to the credit of the depository bank can make no difference, as it seems to us. Moreover, as before observed in disposing of one of the demurrers, the transaction was more than a year after the execu-

tion of the original contract and not shown to have been directly authorized by the commissioners' court of the county, but only by the county judge. Nor do we think the further evidence offered in this connection that neither Davisson, Gregg nor Stitzer were without personal knowledge of the method of disposing of said $50,000 of bonds, and had no personal knowledge of the entry of credit stated, can be material.

[8, 9] Appellants offered further evidence to the effect that the county contracted to pay the engineer a salary of $10,000 a year; that Davisson, a member of the contracting firm, paid Young and another $2,500 as agents for the sale of the bonds; that the contracting firm was indebted to Eastland county in the sum of $108,292.38 for machinery and material purchased; that Gregg, one of the members of the contracting firm, knew nothing of the purchase of the machinery by the county, or what property the contracting firm then owned, or of the personal responsibility of the members of the firm, or of the Young note; that Gregg, Stitzer, and Fleming had sold their entire interest to Davisson, the remaining member of the firm; that county judge Starnes owned stock in the City National Bank; that Starnes publicly stated in the adjoining town of Ranger that any funds of the county could be used for the grading of the roads; and that the tax rendition of the contracting firm for the year 1921 was $15,000, of Stitzer $4,000, of Fleming $3,000, of Gregg $2,000, and that Davisson failed to make a rendition. None of these circumstances in our judgment were material and have no legal weight in a determination of the issue of whether the original contract was invalid, or as showing, or tending to show that the commissioners' court of Eastland county in executing the contract designed to dispose of the bond issue of the county for less than their par value and accrued interest, and adopted the wording of the contract as a mere subterfuge to avoid the requirements of the law. At most such circumstances, as already suggested, constitute mere irregularities in the execution of the contract, and possibly in some instances would authorize restraining orders, but, while in the prayer of the appellants among other things they prayed for injunctions and the appointment of a receiver of the property of the contracting firm, the record shows that since the occurrence complained of, and since the trial of this case below, there has been an entire change in the membership of the commissioners' court of Eastland county, and there are no allegations and nothing in the record to suggest that the present county judge or members of the commissioners' court will be guilty of irregularities, or permit any abuse in the execution of the contract to the injury of the county. There was no proof offered that the salary fixed for the engineer was unusual or exorbitant under the circumstances, or which tended to show that the contracting parties who assigned their interest to Davisson occupied any relation of special trust and confidence towards the county, or that by the assignment of their interest in the contract to Davisson they had been released from liability, nor will the law imply such a release of liability. Nor was there any proof offered that upon a final balancing of accounts, insufficiency of bond, want of financial responsibility of the contracting firm, or of its individual membership, or for any other reason the county is in danger of losing the indebtedness of the contracting firm for machinery, etc., purchased by the county. And in this connection we will add generally that it is undisputed that the contract was made after due advertisement; in form and effect it bears every evidence of thoughtful care in safeguarding the interest of the county. It is not alleged nor proven that the bid of the contracting firm was not the lowest and best bid offered, or that the price fixed by the contracting firm as the value of the units of work to be done was inflated or exorbitant so as to authorize a legal inference that the features of the contract and circumstances developed in its execution, that are relied upon by appellants as invalidating the contract, were all so worded and administered as a mere pretext to avoid complying with the provisions of the law requiring the bonds to be sold for par and accrued interest.

[10] As to the receivership, we think it quite clear that none is authorized. While it appears that Davisson by purchase has become the sole owner of the contract and right to proceed thereunder, the concern is a going one and not shown to be insolvent. True, Davisson failed to give a rendition of his property, but in one of the bills of exception it appears that he had property in New Mexico and other places valued by him at $100,000, and no complaint has been made that the contractors failed to give a bond such as was required by the commissioners' court, or that the bond given was insufficient, together with other safeguards provided for in the contract to fully secure Eastland county from all damage.

[11] There is a further contention that the Honorable E. A. Hill, who so patiently and carefully tried this case below, as is manifest from the record, was disqualified. However, this question is not pressed upon us and may be answered by the simple statement that the validity of the bonds in question and of the tax levies made to secure their payment are not involved, and under the decisions in City of Oak Cliff v. State of Texas, 97 Tex. 391, 79 S. W. 1068, and City of Dallas v. Peacock, 89 Tex. 58, 33 S. W. 220, it is clear that the judge was not disqualified.

[12] In deference to the present members

of the commissioners' court, we should perhaps further notice the fact that that court, by a formal order entered upon its minutes and certified to this court for consideration, expressed its desire to withdraw the defenses presented by Eastland county, acting through its former court and commissioners, and requested that this court grant the prayer of appellants to either reverse or reverse and render the judgment below. We think it sufficient to say that, under the rules of practice and law by which we must be guided, we have no power to give effect to such change of position and request. We can only review the proceedings as presented in the transcript and statement of facts, certified as provided by law. Moreover, in this particular case the rights of the contractors are presented and insisted upon, and these of necessity must be determined.

Before announcing our final conclusion, we should perhaps add that this appeal could doubtless, and perhaps should, have been disposed of by a less extended opinion, but from the records of this court and the common knowledge of the section of the controversy of which we may take judicial notice, we know that the matters presented in this case have been made the subject of heated political and judicial controversies including an unsuccessful effort on the part of these appellants to remove the former county judge and other members of the former commissioners' court. We have therefore, as carefully as we could, considered the voluminous record now presented and made the effort to carefully take up and dispose of the many contentions in behalf of appellants, to the end that we might make as plain as we could that the appellants, as presented on this appeal, have no substantial complaint which would authorize or require this court to reverse the judgment below. We accordingly conclude that all assignments of error and propositions thereunder must be overruled and the judgment affirmed.

---

⬄For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes